UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                          :
DR. GEORGE PIECZENIK,                     :
                                          :
                                          :
         Plaintiff,                       :    Civil Action No. 10-2230 (JAP)
                                          :
              v.                          :    **OPINION**
                                          :
ABBOTT LABORATORIES, et al.,              :
                                          :
                                          :
         Defendants.                      :
_____:

PISANO, District Judge.

Plaintiff George Pieczenik ("Plaintiff"), proceeding *pro se*, brings this action against a number of defendants[1] alleging patent infringement and violations of the Racketeer Influenced

---

[1] As of the date of this Opinion, the following are the defendants that remain in this case: Abbott Laboratories, Abbott Laboratories, Inc., Allergan USA, Inc., Amgen Inc., Amgen USA, Inc., Antyra, Inc., Astellas Pharma US, Inc., AstraZeneca LP, AstraZeneca Pharmaceuticals LP, Aventis, Inc., Aventis Pharmaceuticals Inc., Baxter Diagnostics, Inc. (now Baxter Healthcare Corporation), Bayer Corporation, Bayer Cropscience (New Jersey) Inc., Bayer Healthcare LLC, Bayer Healthcare Pharmaceuticals, Inc., Bayer Materialscience LLC, Bayer Pharma Chemicals Inc., Biogen Idec Inc., Biogen Idec U.S. Corporation, Boehringer Ingelheim Vetmedica, Inc., Boehringer Ingelheim Roxane, Inc., Bracco Diagnostics, Inc., Canon, U.S.A., Inc., Centocor Ortho Biotech Products, L.P., Centocor Ortho Biotech Services, LLC, Centocor Ortho Biotech, Inc., Corning Incorporated, Daiichi Sankyo, Inc., Dainippon Sumitomo Pharma America Holdings, Inc., Dainippon Sumitomo Pharma, America, Inc., Dow AgroSciences LLC, Dow Corning Corporation, Dyax Corporation, E.I. du Pont de Nemours & Company, Forest Laboratories, Inc., GE Healthcare Biosciences Bioprocess Corp., GE Healthcare Bio-Sciences Corp., GE Healthcare Inc., GE Healthcare Strategic Sourcing Corporation, Genzyme Corporation, Gilead Sciences, Inc., GlaxoSmithKline LLC, Howard Hughes Medical Institute, International Business Machines Corp., Invitrogen Corporation, Johnson & Johnson, Kyowa Hakko Kirin America, Inc., Kyowa Hakko Kirin Pharma, Inc., Medarex, Inc., MedImmune LLC, Millennium Pharmaceuticals, Inc., Mitsubishi Tanabe Pharma America, Inc., Mitsubishi Tanabe Pharma, Development America, Inc., Mitsubishi Tanabe Pharma Holdings America, Inc., Monsanto Ag Products LLC, Monsanto Company, Novartis Corporation, Novartis Pharmaceutical Corporation, Novartis Vaccines and Diagnostics, Inc., Novo Nordisk, Inc., Onyx Pharmaceuticals, Inc., Ortho-McNeil Janssen Scientific Affairs, LLC, Ortho-McNeil Pharmaceutical, Inc., Ortho-McNeil, Inc., OSI Pharmaceuticals, Inc., PerkinElmer Health Sciences, Inc., Qiagen Incorporated, Sanofi-Aventis U.S. Inc., Sanofi-Aventis U.S. LLC, Schering Berlin Inc., Shionogi Pharma Sales, Inc., Shionogi Pharma, Inc., Shionogi USA Holdings, Inc., Shionogi USA, Inc., Siemens Corporation, Siemens Diagnostics Finance Co. LLC, Siemens Healthcare Diagnostics Inc., Siemens Medical Solutions USA, Inc., Solvay Chemicals, Inc., Solvay Pharmaceuticals, Inc., Syngenta Crop Protection, Inc.,

and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq*. Presently before the Court is a joint motion by all defendants to dismiss the Amended Complaint (hereinafter, the "Complaint" or "Compl.") pursuant to Federal Rule of Civil Procedure 12(b)(6) and 12(b)(1). Plaintiff has opposed the motion. Also before the Court is a motion by Plaintiff seeking recusal of the undersigned. The Court has considered the submissions of the parties with respect to each motion and decides the matters without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons below, Plaintiff's motion for recusal is denied. Defendants' motion to dismiss is granted.

## I. BACKGROUND

The Patent[2]

George Pieczenik is the named inventor and the owner of United States Patent No. 5,866,363 (the " '363 patent"), entitled "Method and Means for Sorting and Indentifying Biological Information." According to Plaintiff, the '363 patent "discloses and claims a method and means of identifying biological information. Compl. ¶ 107. The Complaint states that

> [t]he patent claims random nucleotide libraries that code for random peptide libraries separately and on display phage. It also claims random monoclonal and polyclonal libraries and the use of combinations of the two in a matrix to identify molecular surfaces, antibody specificity, lead compounds for drug discover[y], receptors and antigenic determinants.

Compl. ¶ 109. The '363 patent is licensed to, among others, New England Biolabs, Inc., ("NEB"), who has held the license since 2004.

---

Syngenta Seeds, Inc., Taiho Pharma U.S.A., Inc., The Dow Chemical Company, ZymoGenetics, Inc., ZymoGenetics LLC.

[2] In addressing a motion to dismiss, the Court must accept as true the allegations contained in a complaint. *See Toys "R" US, Inc. v. Step Two, S.A.*, 318 F.3d 446, 457 (3d Cir. 2003); *Dayhoff, Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1301 (3d Cir. 1996). Accordingly, the facts recited herein are taken from the Amended Complaint and its exhibits unless otherwise indicated and do not represent this Court's factual findings.

The Instant Action

On July 27, 2010, Plaintiff filed his Complaint alleging infringement of the '363 patent as well as RICO violations against approximately 100 defendants. With respect to infringement, the Complaint makes various allegations. Generally speaking, it alleges, among other things, that the defendants each hold various patents or patent applications which Plaintiff contends "are evidence for the use, manufacture and sale of products and methods described and claimed in the '363 patent." Compl. ¶ 133. The Complaint also alleges that certain defendants purchased "Phage Display Library Kit[s]" from NEB prior to NEB obtaining its license from Plaintiff.

Plaintiff's RICO claims are asserted against most, but not all, of the defendants. These RICO claims frequently find their basis in allegations of World War II-era activities. For example, as to the Abbott defendants, Plaintiff's RICO count alleges:

> Abbott's relationship with BASF, which was part of I.G. Farben,[3] which was never de-nazified by the McCloy commission[,] makes it part of that continuing criminal conspiracy. Germany never having signed a peace treaty with the Allies, in order to avoid reparation for its use of slave labor, on advice from the Allied Commissioner John McCloy. This has left the [G]erman industries and their collaborators exposed to this court[']s jurisdiction under the US RICO statutes.

Compl. ¶ 145. Similarly, Plaintiff's RICO claim against Astellas Pharma US, Inc. is based upon allegations that Astellas is connected to "Unit 731," which Plaintiff alleges was a biological warfare unit that "specializ[ed] in vivisection of Chinese and American prisoners of war" during World War II. Compl. ¶ 198.

As of the date of this Opinion, there remain 88 defendants ("Defendants") in this case who have jointly filed this motion to dismiss in response to the Complaint.

---

[3] According to Plaintiff, "I.G. Farben" was "a conglomerate of German chemical industries that formed a part of the financial core of the German Nazi regime." Compl. ¶ 246.

3

## II. ANALYSIS

A.  Motion for Recusal

Appearing before the Court at a recent in-person conference, Plaintiff made an oral motion for recusal.  The Court denied Plaintiff's oral motion without prejudice to Plaintiff filing a formal motion detailing his grounds for relief.  D.I. 140.  Plaintiff filed such a motion on February 23, 2011, seeking recusal of the undersigned.  D.I. 145.  The grounds cited for recusal include:  the possibility that the undersigned holds shares in any of the defendant public companies; an alleged "favoritism" toward opposing counsel; failure of the Court to allow Plaintiff certain discovery; failure to hold a *Markman* hearing; the Court's "hidden agenda" as evidenced by the consolidation of Plaintiff's four separate actions into this single action before the undersigned; failure to remove the firm Milbank Tweed Hadley McCloy LLP as *pro hac vice* counsel in this matter; and an alleged prejudice against *pro se* litigants, against Jewish litigants, against "scientists acting as lawyers," against inventors who litigate their patents, and against science generally.  Recusal Motion ¶¶ 1-12.  Plaintiff also objected to, and apparently bases his motion for recusal on, this Court's mention at the recent hearing of certain prior litigation in which Plaintiff has engaged.[4]

The decision of whether to recuse from hearing a matter lies within the discretion of the trial judge.  *United States v. Wilensky*, 757 F.2d 594, 599-600 (3d Cir. 1985).  Two statutes govern the issue of recusal; a party may move for recusal under either 28 U.S.C. § 455 or 28 U.S.C. § 144.  Under section 455(a), "[a]ny … judge, … of the United States shall disqualify

---

[4] Also, Plaintiff states in his motion papers that Plaintiff, presumably by way of filing this lawsuit, has given this Court "authority and jurisdiction over [G]ermany and all [G]erman companies," making the Court "the first Uberjudge."  Plaintiff has advised that should the Court exercise this authority to order "Bayer" to put the name of the inventor of aspirin on its website, Plaintiff "would, with pleasure, withdraw this Motion for Recusal."  Id. ¶¶ 18-19.  The Court declines Plaintiff's invitation for a number of reasons, not the least of which being that it is wholly improper and without basis.

himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Further, section 455(b)(1) provides that a judge shall also disqualify himself where "he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding[.]" 28 U.S.C. § 455. Section 144 states that "[w]henever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein[.]" While both statutes have similar substantive standards, § 144 includes the requirement of a "timely and sufficient affidavit" setting forth with specificity the facts underlying the motion.

     Here, Plaintiff has not indicated under which statute he moves, so the Court will examine both. To the extent that Plaintiff's submission can be considered an "affidavit" in support of a motion under § 144, his affidavit lacks the requisite factual support to qualify as a "timely and sufficient" affidavit and thus, Plaintiff cannot meet the requirements of section 144. *See Smith v. Danyo*, 585 F.2d 83, 87 (3d Cir. 1978) ("In judging the sufficiency of § 144 affidavits ... [a court] must determine that the facts establish "fair support" for the charge of bias."); *Cooney v. Booth*, 262 F.Supp.2d 494, 500-01 (E.D. Pa. 2003) (stating that recusal must be based on facts in the affidavit and not on the movant's conjecture, speculation, conclusory statements or opinions (citing *United States v. Vespe*, 868 F.2d 1328, 1340 (3d Cir. 1989)).

     Moreover, where a party claims that a judge should recuse because of a personal bias, prejudice, or lack of impartiality towards that party, he generally must show that such bias or prejudice is grounded in extrajudicial sources, such as personal animus, rather than judicial actions that can be corrected on appeal. *See Smith v. Danyo*, 585 F.2d 83, 87 (3d Cir.1978). Extrajudicial bias "refers to a bias that is not derived from the evidence or conduct of the parties

5

that the judge observes in the course of the proceedings." *Johnson v. Trueblood*, 629 F.2d 287, 291 (3d Cir. 1980). In the absence of extrajudicial bias, a party seeking recusal must show that a judge has a "deep-seated and unequivocal antagonism that would render fair judgment impossible" to obtain recusal. *Liteky v. United States*, 510 U.S. 540, 555-556 (1994) ("opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible"). The Supreme Court has made clear that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion" because, "[i]n and of themselves, they cannot possibly show reliance upon an extrajudicial source." *Liteky*, 510 U.S. at 555.

Furthermore, if a party claims that a judge should recuse under section 455(a) because his "impartiality might reasonably be questioned" the test that applies is "whether a reasonable person, with knowledge of all the facts, would conclude that the judge's impartiality might reasonably be questioned." *In re: Kensington Int'l Ltd.*, 368 F.3d 289, 301 (3d Cir.2004). This is an objective inquiry that considers not only whether a judge is actually impartial but whether there is an appearance of impartiality. *See In re: Community Bank of Northern Virginia*, 418 F.3d 277, 320 (3d Cir. 2005).

Here, Plaintiff's motion fails because Plaintiff has not shown the existence of, the possibility of, or the appearance of a personal bias or prejudice against him or in favor of an adverse party, nor has he shown that there is any basis for reasonably questioning the impartiality of the undersigned. Plaintiff's motion consists merely of speculation and unsupported assertions of bias and prejudice.

In sum, the Court has carefully reviewed Plaintiff's motion and has considered all governing standards. The record here does not present any grounds warranting recusal in this case. Plaintiff's motion, therefore, is denied.

B.  Motion to Dismiss

Legal Standard Under Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a court may grant a motion to dismiss if the complaint fails to state a claim upon which relief can be granted. The Supreme Court set forth the standard for addressing a motion to dismiss under Rule 12(b)(6) in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The *Twombly* Court stated that, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, ... a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Id.* at 555 (internal citations omitted); *see also Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (stating that standard of review for motion to dismiss does not require courts to accept as true "unsupported conclusions and unwarranted inferences" or "legal conclusion[s] couched as factual allegation[s]." (internal quotation marks omitted)). Therefore, for a complaint to withstand a motion to dismiss under Rule 12(b)(6), the "[f]actual allegations must be enough to raise a right to relief above the speculative level, ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact) ..." *Twombly*, 550 U.S. at 555 (internal citations and footnote omitted).

The Supreme Court has emphasized that, when assessing the sufficiency of a civil complaint, a court must distinguish factual contentions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 129 S.Ct.

1937, 1949, 173 L.Ed.2d 868 (2009).  When evaluating a motion to dismiss for failure to state a claim, district courts conduct a two-part analysis.

> First, the factual and legal elements of a claim should be separated.  The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."  In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.
>
> *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir.2009) (quoting *Iqbal*, 129

S.Ct. at 1949-50).  A complaint will be dismissed unless it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* at 1949 (quoting *Twombly*, 550 U.S. at 570).  This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Fowler*, 578 F.3d at 211 (citations omitted).

<u>Defendants' Motion</u>

Defendants argue that there are numerous grounds warranting dismissal of Plaintiff's Complaint for failure to state a claim upon which relief can be granted.  Generally, they contend that the Amended Complaint fails to meet the basic pleading requirements of the Federal Rules of Civil Procedure.  The Court had earlier *sua sponte* dismissed without prejudice Plaintiff's original complaints[5] in this matter, directing Plaintiff to file a consolidated amended complaint in this action "conforming to all requirements of Rule 8."  In their motion, Defendants contend that the Plaintiff had failed to meet that directive and the Complaint fails to state any plausible claims for patent infringement or RICO violations against any Defendant.  The Court agrees and, as discussed further below, Plaintiff's complaint shall be dismissed in its entirety.

---

[5] This matter was initiated by Plaintiff filing four separate civil actions.  The Court subsequently consolidated the four actions into the instant civil action.

Infringement Claims

Defendants argue that the Complaint sets forth only vague and conclusory allegations that Defendants infringe the '363 patent. Indeed, for most Defendants, Plaintiff has utterly failed to identify any product or process made, used or sold by a Defendant that allegedly infringes. For example, Defendants point out that for most of them, the Complaint simply recites patents and applications allegedly owned by Defendants and then asserts, without further basis, that these patents are evidence of infringing acts. *See, e.g.*, Complaint at ¶ 133 ("These patents are evidence for the use, manufacture and sale of products and methods described and claimed in the '363 patent."). This simply does not suffice.

A patent is infringed when a party "without authority makes, uses or sells any patented invention, within the United States ... during the term of the patent." 35 U.S.C. § 271(a). "[B]y the terms of the patent grant, *no* activity other than the unauthorized making, using, or selling of the claimed invention can constitute direct infringement of a patent, *no matter* how great the adverse impact of that activity on the economic value of a patent." *Paper Converting Mach. Co. v. Magna-Graphics Corp.*, 745 F.2d 11, 16 (Fed. Cir. 1984)) (emphasis in original). Here, to the extent that Plaintiff merely points to the existence of and ownership of patents and/or patent applications as factual support for his infringement claims, those claims fail. Obtaining and owning patents are not activities that fall within the proscriptions of § 271(a). Consequently, Plaintiff's factual allegations that Defendants have filed certain patent applications or own certain patent do not support his claims for patent infringement.

Defendants also point to Plaintiff's allegations that certain patent documents "show evidence of [the defendant] working in the area of monoclonal antibodies, antibody epitopes, combinatorial libraries and phage display libraries," *see, e.g.*, Compl. ¶ 183, and note that a

9

number of Plaintiff's claims of infringement are premised on allegations that involve work performed outside of the United States.  Defendants state that in a number of instances, the patents cited as evidence of alleged infringement "are assigned to foreign entities that are not parties to this litigation and/or reflect work done outside the United States."  Joint Brf. at 10 (citing Compl. ¶¶ 185-86, 188-94, 224, 237, 267-70, 291-292, 300-05, 342-43, 405-430).

"It is well-established that the reach of section 271(a) is limited to infringing activities that occur within the United States."  *MEMC Electronic Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1375 (Fed. Cir. 2005); *see also Pellegrini v. Analog Devices, Inc.*, 375 F.3d 1113, 1117 (Fed. Cir. 2004) ("[As] the U.S. Supreme Court explained nearly 150 years ago in *Brown v. Duchesne*, 60 U.S. (19 How.) 183, 15 L.Ed. 595 (1857), ... the U.S. patent laws 'do not, and were not intended to, operate beyond the limits of the United States.' "); *Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1251 (Fed. Cir. 2000) ("[T]he right conferred by a patent under our law is confined to the United States and its territories, and infringement of this right cannot be predicated on acts wholly done in a foreign country.'") (internal quotations omitted).  Therefore, to the extent that certain of Plaintiff's claims for infringement are based upon allegedly infringing acts done in a foreign country, such claims fail to state a plausible claim for patent infringement.

Next, Defendants contend that in the limited situations where the complaint can be construed as asserting that a defendant makes, uses or sells antibodies, antigens, andibody-peptide pairs and individual peptides, those claims fail as a matter of law.  They argue that on its face the '363 patent cannot possibly cover such products.  In support of their argument, Defendants rely upon the patent's plain language as well as reference to the claim construction of another court in a previous litigation that limit the claims of the '363 patent.  That previous

litigation involved allegations of infringement of the '363 patent brought against Defendant Dyax Corporation.[6]  *See Pieczenik v. Dyax Corp*, 226 F. Supp. 2d 314 (D. Mass. 2002) *aff'd* 76 Fed. Appx. 293 (Fed. Cir. 2003) *cert. denied* 541 U.S. 959, 124 S.Ct. 1715, 158 L.Ed.2d 400 (2004).

Indeed, courts have construed the '363 patent as covering a "library," which is a collection of nucleic acids with a certain defined boundaries.  *See id.*  As Defendants note, Plaintiff himself asserts that his the claims of the '363 patent are directed at libraries.  S*ee* Compl. ¶ 109 ("The patent claims random nucleotide libraries … [and] monoclonal and polyclonal libraries.").  The patent being directed to libraries, to the extent that the Complaint contains references individual and/or synthetically manufactured peptides and individual antibodies, those fall outside of the scope of the patent and the allegations cannot support a claim for infringement.  Additionally, to the extent that Plaintiff's claim of direct infringement against Defendant Invitrogen Corporation is based on the sale of "vectors for the display of combinatorial libraries" and "DynaBeads for Phage Display and BioPanning," these also are not "libraries" as covered by the '363 patent and Plaintiff's claim of direct infringement against Invitrogen fails as well.

With respect to Invitrogen, Plaintiff also brings a claim of inducement of infringement premised upon the sale of these vectors and DynaBeads.  Indeed, the patent statutes provide that "[w]hoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b).  "To prove inducement, a patentee must show direct infringement, and that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement."  *i4i Ltd. Partnership v. Microsoft Corp.*, 598 F.3d 831, 851 (Fed. Cir. 2010).

---

[6] In *Dyax*, the court construed several limitations of claims 24 and 34 of the '363 patent.  The limitations construed by the *Dyax* court also appear in many other claims of the '363 patent.

Here Plaintiff has not plead facts sufficient to support the elements of this claim. The *only* facts alleged in support of his inducement claim is that Defendant sold the aforementioned items. This is not sufficient. Significantly, there are no allegations of direct infringement by a third party. Nor are any facts pled from which it can be inferred that Invitrogen "knowingly" induced infringement or possessed "specific intent." Plaintiff has, therefore, failed to plead a plausible claim against Invitrogen for indirect infringement.

Last, Defendants argue that to the extent that Plaintiff grounds his claims for infringement in allegations that several of the Defendants made purchases of "combinatorial peptide phage display libraries" from NEB, those claims fail as well. The Court agrees. First, Plaintiff does not even allege that the purchased libraries fall within the scope of the '363 patent. Further, even if it assumed *arguendo* that these libraries do, Section 271(a) extends only to "mak[ing], us[ing] or sell[ing] any patented invention"; allegations that a defendant merely made a purchase is not sufficient. 35 U.S.C. § 271(a); *see also Genetic Technologies Ltd. v. Interleukin Genetics Inc.*, No. 10-CV-69-BBC, 2010 WL 3122304, at *4 (W.D. Wis. August 09, 2010) ("Plaintiff does not allege that defendant's mere purchase of the kit is an infringing act, nor could it.") (citing § 271(a)). Consequently, the Complaint being utterly devoid of facts as to how such purchases could constitute infringement, such claims are dismissed.[7]

Having considered the allegations in the Complaint against each Defendant, the Court finds that Plaintiff has failed to state a plausible claim for infringement against any Defendant. His infringement claims, therefore, are dismissed in their entirety.

---

[7] Moreover, many of the alleged purchases from NEB were in 2001, and, therefore, the infringement claims based on such a purchase appear to fall outside of the six-year statute of limitations of 35 U.S.C. § 286.

RICO Claims

Plaintiff's RICO claims are so wholly without merit they require little discussion. However, it is clear that Plaintiff, perhaps being somewhat naïve in this area of the law, utterly misapprehends the nature and requirements of a civil RICO claim. Therefore, to assist Plaintiff (a very experienced *pro se* litigant and college professor who has advised his students that he can teach a course "on how to sue in Federal Court"[8]) in understanding the requirements of a civil RICO claim, the Court shall detail some of the Complaint's more significant shortcomings.

Among the several deficiencies in Plaintiff's RICO claims is that, at the threshold, Plaintiff lacks standing to bring them. RICO provides a private cause of action for "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter." *Hemi Group, LLC v. City of New York, N.Y.*, -- U.S. -- , 130 S. Ct. 983, 987 (2010) (quoting 18 U.S.C. § 1964(c)). Under RICO, a "plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S. Ct. 3275, 87 L.Ed.2d 346 (1985). Thus, to establish standing under section 1964(c), "a RICO plaintiff [must] make two related but analytically distinct threshold showings ...:(1) that the plaintiff suffered an injury to business or property; and (2) that the plaintiff's injury was proximately caused by the defendant's violation of 18 U.S.C. § 1962." *Maio v. Aetna, Inc.*, 221 F.3d 472, 483 (3d Cir. 2000) (footnote omitted). Further, as this Court has previously noted

> [a]lthough RICO is to be read broadly, section 1964(c)'s limitation of RICO standing to persons injured in their business or property has a restrictive significance. That limitation helps to assure that RICO is not expanded to provide a federal cause of action and treble damages to every tort plaintiff, and focuses the

---

[8] Adler Decl. Ex. D ("Biochemistry 301, Lecture #8, Nucleic Acid Chemistry" available at http://www.rci.rutgers.edu /~piecze/Lectures/Piecz%20Biochem%20Lect%238.doc) (also telling students "they can "sue anybody" in federal court "on racketeering and criminal organization charges").

>inquiry of injury to the plaintiff's financial position. Therefore, a plaintiff, to make a showing of standing under 18 U.S.C. § 1964(c), must proffer proof of a concrete financial loss and not mere injury to a valuable intangible property interest.

*Township of Marlboro v. Scannapieco*, 545 F.Supp.2d 452, 458 (D.N.J. 2008) (internal citations, quotation and editing marks omitted).  Here, Plaintiff has not alleged any injury, and certainly not any financial injury, that he suffered as a result of Defendants' alleged RICO violations. Consequently, his claims fail at the outset.[9]

Furthermore, as Defendants note, although Plaintiff has not specified which part of § 1962 Defendants purportedly violated, an element common to all claims under RICO is a pattern of "racketeering activity."  *See* 18 U.S.C. § 1962(a) – (d).  "Racketeering" is defined by § 1961(1) and includes, among many other things, "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical."  § 1961(1).[10]  A "pattern of racketeering activity"

---

[9] While Defendants bring their motion under Rule 12(b)(1) and 12(b)(6), the Court reviews Defendants' motion to dismiss for failure to establish standing under RICO under Rule 12(b)(6).  *See Township of Marlboro*, 545 F.Supp.2d at 457 n. 6.

[10] "[R]acketeering activity" means (A) any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment for more than one year; (B) any act which is indictable under any of the following provisions of title 18, United States Code: Section 201 (relating to bribery), section 224 (relating to sports bribery), sections 471, 472, and 473 (relating to counterfeiting), section 659 (relating to theft from interstate shipment) if the act indictable under section 659 is felonious, section 664 (relating to embezzlement from pension and welfare funds), sections 891-894 (relating to extortionate credit transactions), section 1028 (relating to fraud and related activity in connection with identification documents), section 1029 (relating to fraud and related activity in connection with access devices), section 1084 (relating to the transmission of gambling information), section 1341 (relating to mail fraud), section 1343 (relating to wire fraud), section 1344 (relating to financial institution fraud), section 1425 (relating to the procurement of citizenship or nationalization unlawfully), section 1426 (relating to the reproduction of naturalization or citizenship papers), section 1427 (relating to the sale of naturalization or citizenship papers), sections 1461-1465 (relating to obscene matter), section 1503 (relating to obstruction of justice), section 1510 (relating to obstruction of criminal investigations), section 1511 (relating to the obstruction of State or local law enforcement), section 1512 (relating to tampering with a witness, victim, or an informant), section 1513 (relating to retaliating against a witness, victim, or an informant), section 1542 (relating to false statement in application and use of passport), section 1543 (relating to forgery or false use of passport), section 1544 (relating to misuse of passport), section 1546 (relating to fraud and misuse of visas, permits, and other documents), sections 1581-1592 (relating to peonage, slavery, and trafficking in persons)., [FN1] section 1951 (relating to interference with commerce, robbery, or extortion), section 1952 (relating to racketeering), section 1953 (relating to interstate transportation of wagering

requires at least two acts of racketeering activity within a ten-year period. 18 U.S.C. § 1961(5). As the Complaint fails to allege any statutorily-defined racketeering activities or a pattern of the same, Plaintiff's RICO claims are dismissed pursuant to Rule 12(b)(6).[11]

Plaintiff's "Cross-Motion"

Toward the end of Plaintiff's opposition brief, Plaintiff states, "Bracco never responded to the initial Complaint, nor to the Amended Complaint. Therefore a request for partial summary judgment of infringement by Bracco be entered." Pl. Opp. at 3. To the extent as this can be construed as a cross-motion for entry of default judgment, it is denied. Defendant Bracco Diagnostics Inc. is a party to the joint motion to dismiss (see Def. Brf. at 90), and, therefore, has not, contrary to Plaintiff's assertion, failed to respond to the Complaint.

---

paraphernalia), section 1954 (relating to unlawful welfare fund payments), section 1955 (relating to the prohibition of illegal gambling businesses), section 1956 (relating to the laundering of monetary instruments), section 1957 (relating to engaging in monetary transactions in property derived from specified unlawful activity), section 1958 (relating to use of interstate commerce facilities in the commission of murder-for-hire), section 1960 (relating to illegal money transmitters), sections 2251, 2251A, 2252, and 2260 (relating to sexual exploitation of children), sections 2312 and 2313 (relating to interstate transportation of stolen motor vehicles), sections 2314 and 2315 (relating to interstate transportation of stolen property), section 2318 (relating to trafficking in counterfeit labels for phonorecords, computer programs or computer program documentation or packaging and copies of motion pictures or other audiovisual works), section 2319 (relating to criminal infringement of a copyright), section 2319A (relating to unauthorized fixation of and trafficking in sound recordings and music videos of live musical performances), section 2320 (relating to trafficking in goods or services bearing counterfeit marks), section 2321 (relating to trafficking in certain motor vehicles or motor vehicle parts), sections 2341-2346 (relating to trafficking in contraband cigarettes), sections 2421-24 (relating to white slave traffic), sections 175-178 (relating to biological weapons), sections 229-229F (relating to chemical weapons), section 831 (relating to nuclear materials), (C) any act which is indictable under title 29, United States Code, section 186 (dealing with restrictions on payments and loans to labor organizations) or section 501(c) (relating to embezzlement from union funds), (D) any offense involving fraud connected with a case under title 11 (except a case under section 157 of this title), fraud in the sale of securities, or the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), punishable under any law of the United States, (E) any act which is indictable under the Currency and Foreign Transactions Reporting Act, (F) any act which is indictable under the Immigration and Nationality Act, section 274 (relating to bringing in and harboring certain aliens), section 277 (relating to aiding or assisting certain aliens to enter the United States), or section 278 (relating to importation of alien for immoral purpose) if the act indictable under such section of such Act was committed for the purpose of financial gain, or (G) any act that is indictable under any provision listed in section 2332b(g)(5)(B)."

[11] Because the Court's decision disposes all claims as to all Defendants, is not necessary for the Court to reach the numerous remaining arguments proffered by Defendants.

**III. CONCLUSION**

For the reasons above, Plaintiff's motion for recusal is denied and Defendants' joint motion to dismiss is granted.  Because Plaintiff has already been given one opportunity to amend his complaint, and because the Court finds that permitting further amendment would be futile, Plaintiff's complaint is dismissed as to all defendants with prejudice.  An appropriate Order accompanies this Opinion.

/s/ JOEL A. PISANO
United States District Judge

Dated:  March 23, 2011